**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

**JEFFREY PARKER,** on behalf of himself and all others similarly situated,

Plaintiff,

**-v.-**

**WILLIAMS-SONOMA, d/b/a MARK & GRAHAM,**

Defendant.

-------------------------------------------------------------x

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff**, JEFFREY PARKER** ("Plaintiff" or "Mr. Parker") individually and on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through him undersigned counsel, **Robert Schonfeld, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, WILLIAMS-SONOMA, d/b/a MARK & GRAHAM ("Mark & Graham") or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*., arising from Defendant's failure to ensure that its ecommerce Website, is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff, JEFFREY PARKER**,** is a resident of Bronx County and is permanently disabled due to legal blindness. Mr. Parker suffers from Retinitis Pigmentosa, a progressive degenerative disease of the retina that has reduced the visual field of his better eye to less than twenty degrees, rendering him legally blind under both state and federal standards. His condition has been evaluated and certified by his examining optometrist, Dr. Claudette Lomonaco, OD, on the New York State Commission for the Blind and Visually Handicapped Report of Legal Blindness, dated November 12, 2025. Dr. Lomonaco identified Retinitis Pigmentosa as the underlying cause of Plaintiff's qualifying visual impairment and confirmed that his condition meets the criteria for legal blindness, entitling him to all privileges and accommodations afforded to individuals who are legally

blind under applicable state and federal law. Exhibit A

2. Mr. Parker is a proficient user of screen reading technology, including JAWS and NVDA, and relies exclusively on keyboard navigation to access digital environments independently. Because he cannot visually perceive website content in the manner available to sighted users, he depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive controls, and programmatically determinable navigation. For blind and visually impaired consumers such as Mr. Parker, screen reading software is not optional; it is the only means by which he can independently access the internet, evaluate products, and complete commercial transactions without assistance from a sighted third party.

3. For Mr. Parker, the specific items he sought on www.markandgraham.com are directly tied to his life as a legally blind individual navigating the world with severely restricted vision. Retinitis Pigmentosa eliminates peripheral vision and progressively constricts the visual field, leaving individuals with only a narrow cone of impaired central sight or none at all. As a result, Plaintiff cannot reliably read printed labels, distinguish product colors in a store environment, confirm the identity of his personal belongings in public spaces, or evaluate the fine construction details of leather goods and accessories by sight. He relies instead on the tactile qualities of products and on descriptive digital information delivered through his screen reader to make informed purchasing decisions. Mark & Graham markets itself as a premium provider of personalized leather goods — including messenger bags, overnighter bags, and totes — that can be monogrammed or inscribed with a name, initials, or custom text through the Website's personalization service. For a legally blind consumer such as Mr. Parker, a monogrammed personal item carries functional significance that goes beyond aesthetics: a monogrammed bag allows him to identify his belongings by touch in shared or crowded environments without requiring sighted assistance, and a personalized gift carries the added dimension of independence in its selection and purchase. The exclusive

availability of Defendant's personalization service through the Website — which cannot be replicated in any brick-and-mortar retail setting — made www.markandgraham.com the only practical means by which Plaintiff could obtain these products with the features he required. Because the Website was not accessible to his screen reader, he was denied that opportunity entirely.

4. Millions of Americans live with significant visual impairments, including more than two million who are legally blind. In New York alone, hundreds of thousands of residents are blind or visually impaired. Congress enacted the Americans with Disabilities Act to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. These protections extend to digital spaces. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web, and has issued formal guidance confirming that web accessibility is a legal obligation under Title III of the ADA.

5. The internet has become indispensable for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted. This exclusion is not a technical inevitability — it is the direct and foreseeable consequence of a failure to design and maintain websites in conformance with established accessibility standards.

6. Screen reading software works by converting digital content into synthesized speech or refreshable Braille output. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper or empty heading structure, rely on mouse-only interactions, or contain broken

ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites and are denied equal access to the goods and services offered therein. Each of these barrier types was identified on www.markandgraham.com during the evaluation of Defendant's Website described more fully below.

7. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. WCAG 2.1 Level AA compliance is readily achievable through standard web development practices and is necessary to provide equal access under the ADA. Defendant, as a sophisticated Fortune 500 retailer generating tens of millions of dollars in annual e-commerce revenue, possesses the technical resources and financial capacity to achieve full compliance.

8. Plaintiff brings this civil action against Williams-Sonoma, Inc., doing business as Mark & Graham, for its failure to design, construct, maintain, and operate its website, www.markandgraham.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its Website — and therefore to the goods and services offered therein, including its signature personalization services — constitutes a violation of Plaintiff's rights under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

9. On three separate occasions — June 23, 2026; July 10, 2026; and August 12, 2026 — Plaintiff attempted to access Defendant's website, www.markandgraham.com, using screen reader technology in order to research and purchase the following Mark & Graham products:

the Harrison Leather Messenger Bag (priced at approximately $399),

the Carson Leather Overnighter Bag (priced at approximately $369), and

the Livia Italian Suede Zip-Top Tote (priced at approximately $175).

These products were selected because each offers functional and personal qualities that are specifically meaningful to Mr. Parker as a legally blind consumer, as described more fully herein. His shopping objectives were concrete, personal, and specific: he intended to review product descriptions, material specifications, color options, sizing and dimension information, the scope of Defendant's personalization service, pricing, and related purchase options, before completing transactions on each of his visits. On each occasion, he was prevented from doing so by pervasive and systemic accessibility barriers on Defendant's Website.

10. On June 23, 2026, Plaintiff visited www.markandgraham.com seeking to purchase the Harrison Leather Messenger Bag. As a legally blind individual who carries with him at all times the assistive devices, prescribed medications, and personal items necessitated by his progressive visual condition, Plaintiff required a well-organized, full-grain leather messenger bag of sufficient compartmental capacity to accommodate those daily necessities. Of particular importance was Defendant's advertised personalization option — the ability to have his initials monogrammed on the bag — which would allow him to identify his belongings independently in shared environments without sighted assistance. On July 10, 2026, Plaintiff returned to the Website seeking to purchase the Carson Leather Overnighter Bag. Because Retinitis Pigmentosa requires ongoing specialist evaluation and, at times, overnight travel in connection with medical care, Plaintiff sought a structured, premium leather overnighter capable of accommodating both personal effects and the assistive technology and medical items he is required to transport when away from home. Again, the monogram personalization feature was a functional priority, allowing him to identify his luggage independently in travel settings. On August 12, 2026, Plaintiff visited the Website seeking to purchase the Livia Italian Suede Zip-Top Tote as a personalized gift for a family member who provides him with transportation and daily assistance made necessary by his visual impairment.

Plaintiff wished to independently select, personalize, and purchase a meaningful gift as an expression of the autonomy that his disability otherwise constrains — an act of independence that Defendant's inaccessible Website denied him entirely.

11. WAVE (Web Accessibility Evaluation Tool) automated accessibility audits conducted on August 20, 2026 by WebAIM revealed the following accessibility violations across the three product pages Plaintiff attempted to access on Defendant's Website:

Harrison Leather Messenger Bag page: 33 accessibility errors, 1 contrast error, and 79 alerts, including 11 images missing alternative text, 2 linked images missing alternative text, 2 spacer images missing alternative text, 4 missing form labels, 1 empty form label, 2 empty heading elements, empty buttons, 1 empty link, and 3 broken ARIA references;

Carson Leather Overnighter Bag page: 38 accessibility errors, 3 contrast errors, and 102 alerts, including 12 images missing alternative text, 2 linked images missing alternative text, 2 spacer images missing alternative text, 4 missing form labels, 2 empty form labels, 4 empty heading elements, 7 empty buttons, 1 empty link, and 4 broken ARIA references; and

Livia Italian Suede Zip-Top Tote page: 45 accessibility errors, 3 contrast errors, and 147 alerts, including 11 images missing alternative text, 2 linked images missing alternative text, 2 spacer images missing alternative text, 4 missing form labels, 4 empty form labels, 8 empty heading elements, empty buttons, 1 empty link, and 6 broken ARIA references.

In the aggregate, the three audited pages of Defendant's Website contained 116 discrete accessibility errors, 7 contrast errors, and 328 alerts, confirming that www.markandgraham.com is systematically and pervasively coded in a manner that is incompatible with screen reader technology across its product catalog. Exhibit B

12. Notwithstanding the breadth and severity of the access barriers documented herein, Defendant has had actual and constructive notice of its Website's failure to comply with the ADA's accessibility requirements for years prior to the filing of this action. Williams-Sonoma, Inc. and its family of brands have been the subject of dozens of written demand letters and formally filed ADA web accessibility complaints in federal courts across the United States, each placing Defendant on notice that its digital properties — including those operated under the Mark & Graham brand — present systematic barriers that exclude blind and visually impaired consumers. Despite this repeated and unambiguous notice, Defendant has taken no meaningful corrective action. Its Website today contains the same categories of barriers — missing alternative text, empty form labels, broken ARIA references, inaccessible interactive controls, and empty heading elements — that have been identified in prior complaints, demonstrating that Defendant's non-compliance is not the product of inadvertence but of deliberate inaction in the face of known legal obligations. This pattern of disregard establishes that Defendant's conduct is willful within the meaning of applicable law and supports the relief sought herein, including injunctive relief sufficient to compel full and lasting remediation.

13. Defendant operates www.markandgraham.com as its primary and dominant commercial channel, generating approximately $73 million in annual revenue during 2025 and approximately $5 million in gross merchandise value during July 2026 alone. The Website is the exclusive platform through which Defendant offers its personalization services — monogramming, custom lettering, and engraving — which are central to Mark & Graham's brand identity and among the primary reasons consumers, including Plaintiff, seek out the Website. Defendant's failure to provide an accessible website denied Mr. Parker equal access to the goods and services it makes available to nondisabled customers, including the personalization features that are uniquely meaningful and functionally necessary to him as a legally blind consumer.

14. For Mr. Parker, the inability to independently review product specifications, select color options through accessible controls, configure personalization details, and complete a checkout transaction is not a mere inconvenience — it is a deprivation of the same commercial autonomy routinely available to every sighted visitor to Defendant's Website. Because he cannot visually inspect leather goods in a physical retail environment, and because Defendant's personalization service exists exclusively online, www.markandgraham.com is the only practical means by which he could obtain the products he sought with the features he required. Defendant's failure to make that platform accessible has caused him concrete, particularized harm and has denied him the full and equal enjoyment of a public accommodation in violation of federal law.

**<u>JURISDICTION & VENUE</u>**

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.

16. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

17. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in Bronx County which is within this District, and accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. See, *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

18. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward New York consumers through its highly interactive ecommerce website, www.markandgraham.com which allows users to browse inventory, review product information, create accounts, and complete purchases. Defendant ships products directly to New York residents and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business. See *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.,* 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

19. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online

20. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## <u>THE PARTIES</u>

21. Plaintiff Jeffrey Parker is, and at all relevant times was, a resident of Bronx County, New York. Mr. Parker is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by his examining optometrist, Dr. Claudette Lomonaco, OD, on the New York State Commission for the Blind and Visually Handicapped Report of Legal Blindness, dated November 12, 2025, Mr. Parker suffers from a visual field limitation of less than twenty degrees in his better eye caused by Retinitis Pigmentosa, a permanent and progressive degenerative retinal

disease that meets the criteria for legal blindness under both state and federal standards and requires the use of screen reading software to access digital content independently. Mr. Parker's condition has been formally registered with the New York State Commission for the Blind and Visually Handicapped, and his qualifying disability is documented in the certification described herein.

22. Plaintiff is a proficient user of screen reader technology, including NVDA and JAWS, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because he cannot visually interpret printed or digital information without assistive technology, Mr. Parker depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen reading software. Proper semantic structure, meaningful alternative text, labeled interactive controls, and programmatically determinable navigation are not optional features for Mr. Parker — they are the essential technical conditions upon which his ability to access any digital content independently depends.

23. For Mr. Parker, the products he sought on www.markandgraham.com are directly connected to his life as a legally blind individual navigating daily responsibilities with a severely restricted visual field. Retinitis Pigmentosa progressively eliminates peripheral vision, leaving individuals with only a narrow tunnel of residual sight or none at all. As a result, Mr. Parker cannot reliably read printed labels, identify his personal belongings by sight in public or shared settings, inspect the material construction or color of goods in a physical retail environment, or evaluate the descriptive and dimensional details of leather accessories without the aid of a screen reader conveying accessible digital content. Mark & Graham's product catalog — which includes the Harrison Leather Messenger Bag, the Carson Leather Overnighter Bag, and the Livia Italian Suede Zip-Top Tote — is of specific interest to Mr. Parker because each product is offered with Defendant's signature personalization service, through which consumers may add monogrammed initials, a name, or custom text directly to the item. For a legally blind consumer such as Mr. Parker,

a monogrammed bag or accessory carries functional value that is qualitatively different from what it represents to a sighted purchaser: it provides a tactile and permanent identifying marker that allows him to distinguish his personal belongings in travel, medical, and professional settings without relying upon sighted assistance. Because Defendant's personalization service is offered exclusively through www.markandgraham.com and cannot be accessed or configured through any physical retail channel, the Website is the only practical means by which Mr. Parker could obtain the products he sought with the features most essential to his independence. Defendant's failure to provide an accessible Website denied him that ability entirely.

24. Upon information and belief, Defendant Williams-Sonoma, Inc., doing business as Mark & Graham, is a corporation organized and existing under the laws of the State of California, with its principal place of business located at 151 Union Street, San Francisco, California 94111. Williams-Sonoma, Inc. is a publicly traded company listed on the New York Stock Exchange under the ticker symbol WSM and is among the largest specialty retail corporations in the United States. Defendant owns, operates, and controls the Mark & Graham brand and its commercial website, www.markandgraham.com, through which it markets, displays, and sells premium personalized leather goods, accessories, travel items, and gifts to consumers throughout the United States, including residents of New York. Defendant generates approximately $73 million in annual e-commerce revenue through the Website and is solely responsible for the design, construction, maintenance, and operation of www.markandgraham.com and all digital content published thereon. Defendant is not a subsidiary of any third-party entity for purposes of this action and exercises direct and independent operational control over the Website that is the subject of Plaintiff's claims.

**STATEMENT OF FACTS**

***Plaintiff's Attempts to Access the Mark & Graham Website and Product Pages***

25. On June 23, 2026, Plaintiff Jeffrey Parker, a legally blind resident of the Bronx, New

York who suffers from Retinitis Pigmentosa resulting in a visual field of less than twenty degrees in his better eye, accessed www.markandgraham.com from his home computer located at 6355 Broadway, Bronx, New York 10471, using NVDA screen reading software and keyboard navigation exclusively. Plaintiff navigated to the Harrison Leather Messenger Bag product page, located at the following URL: https://www.markandgraham.com/products/harrison-leather-messenger-bag/. Plaintiff visited this page for the specific purpose of reviewing the product's dimensions, material construction, color options, personalization capabilities, and pricing, and with the intent to complete a purchase of the Harrison Leather Messenger Bag, including the "Add Personalization for $17" service option advertised on that page. As a legally blind individual who relies on a monogrammed marking to identify his personal belongings independently in shared and public environments, the personalization option was a primary and functionally necessary feature of the product Plaintiff intended to purchase.

26. During his visit on June 23, 2026, Plaintiff sought to accomplish the following specific tasks on the Harrison Leather Messenger Bag product page: review all available product images and understand the bag's appearance and dimensions through their alternative text descriptions; select a color option from the available variants presented on the page; configure the quantity and review the order total; activate and complete the "Add Personalization" feature to select a monogram or inscription; review shipping and delivery information; and proceed to checkout to complete the purchase. Each of these tasks requires that the interactive controls, images, form fields, and navigational elements on the product page be coded in a manner compatible with screen reading software. None of them were.

27. During his visit on June 23, 2026, Plaintiff encountered the following specific access barriers on the Harrison Leather Messenger Bag product page, each of which prevented him from independently completing the tasks described in paragraph 25:

(a) Missing Alternative Text on Product Images. The WAVE evaluation tool identified eleven product and contextual images on the Harrison Leather Messenger Bag page that contained no alternative text. When Plaintiff's NVDA screen reader reached these images, it announced them only as "graphic" or "image," conveying no information about the appearance, color, material, or distinguishing features of the bag. Because Plaintiff cannot perceive visual content, this failure deprived him entirely of the descriptive product information available to sighted users, including information about how the bag looks, how it is constructed, and how its color variants differ.

(b) Linked Images and Spacer Images Without Alternative Text. The WAVE tool identified two linked images and two spacer images on the page that also lacked alternative text. The linked images, when reached by Plaintiff's screen reader, were announced without any description of their destination or purpose, making navigation through the page's linked content impossible to accomplish independently. The spacer images were announced as empty or unlabeled elements, creating gaps in the page's apparent structure that disrupted Plaintiff's sequential navigation of the product page.

(c) Missing and Empty Form Labels. The WAVE evaluation identified four instances of missing form labels and one empty form label on the Harrison Leather Messenger Bag page. Form labels are the mechanism by which a screen reader identifies what a given input field is for. Without a label, NVDA announced the field without identifying its purpose. Plaintiff was therefore unable to determine which fields required input for the personalization service, for quantity selection, or for the "Ship to Home" delivery configuration, as each such field was announced without any associated descriptive label.

(d) Empty Heading Elements. Two heading elements on the page were empty — coded as headings in the HTML but containing no text content. Screen readers rely on heading

structure to allow users to navigate efficiently through a page's sections. When Plaintiff's NVDA screen reader reached these empty headings, it announced a heading level with no associated content, breaking the structural map of the page and forcing Plaintiff to lose his navigational position within the product page layout.

(e) Empty Button. At least one button on the Harrison Leather Messenger Bag page was coded with an empty label — meaning the button existed as an interactive element but its label contained no text. When NVDA reached this button, it announced the element as "button" with no description of its function. Plaintiff was therefore unable to determine what action the button would perform and could not interact with it meaningfully or safely.

(f) Empty Link. The WAVE evaluation identified one empty link on the page — a hyperlink element coded without any text or alternative label. NVDA announced this element as "link" with no associated description. Because Plaintiff could not determine the link's destination or purpose, he could not decide whether to activate it and could not use it to navigate the page.

(g) Broken ARIA References. The WAVE tool identified three broken ARIA references on the Harrison Leather Messenger Bag page. ARIA (Accessible Rich Internet Applications) attributes are the technical coding mechanism that web developers use to expose the identity, state, and properties of complex or custom-coded interactive elements to screen readers. Where an ARIA reference is broken, the attribute points to an element that does not exist in the page's code, causing NVDA to announce the associated control incorrectly or not at all. On the Harrison page, the color selector controls — through which a user would choose between available leather colors such as chocolate or brown — were governed by aria-labelledby attributes that the WAVE tool flagged as broken. As a result, when Plaintiff's screen reader reached the color selection area, it could not identify the current color state,

the available options, or how to navigate among them. Plaintiff was unable to select a color for the product he intended to purchase.

(h) Very Low Contrast. The WAVE evaluation identified one instance of very low contrast on the Harrison Leather Messenger Bag page. While contrast errors primarily affect users with low vision rather than those who are totally blind, this finding is evidence that the page was not designed with accessibility as a foundational consideration, and it is consistent with the broader pattern of inaccessible design found throughout the page.

28. As a direct result of the barriers described in paragraph 27, Plaintiff was unable to independently review the product, select a color, configure the personalization option, or proceed to checkout during his June 23, 2026, visit to the Harrison Leather Messenger Bag page. He did not abandon his intent to purchase. He left the page with the intention of returning to attempt the transaction again once the Website was made accessible.

29. On July 10, 2026, Plaintiff again accessed www.markandgraham.com from his home computer at 6355 Broadway, Bronx, New York 10471, using NVDA screen reading software and keyboard navigation. On this occasion, Plaintiff navigated to the Carson Leather Overnighter Bag product page, located at: https://www.markandgraham.com/products/carson-leather-overnighter/. Plaintiff visited this page for the purpose of reviewing the product's dimensions, compartmental structure, available colors, monogram personalization options, and pricing, and with the intent to complete a purchase of the Carson Leather Overnighter Bag. The Carson Leather Overnighter, priced at $369, was selected by Plaintiff because he requires a structured, durable leather travel bag capable of carrying the assistive devices, prescription medications, and personal items he must transport when traveling for medical appointments related to his Retinitis Pigmentosa. The personalization option — "Add Personalization for $17," advertised prominently on the product page — was of specific functional importance to Plaintiff, as a monogrammed overnighter bag

allows him to identify his luggage independently in travel environments without sighted assistance.

30. During his visit on July 10, 2026, Plaintiff encountered the following specific access barriers on the Carson Leather Overnighter Bag product page, each of which is documented in the WAVE accessibility evaluation conducted on August 20, 2026:

(a) Missing Alternative Text on Product Images. The WAVE tool identified twelve product images on the Carson Leather Overnighter Bag page with no alternative text — the highest missing-alt-text count of any of the three pages Plaintiff visited. When Plaintiff's screen reader reached each of these images, it conveyed no information about the bag's appearance, dimensions, construction quality, or color presentation. Plaintiff was unable to obtain through his screen reader the same visual understanding of the product that sighted customers can obtain by viewing the photographs.

(b) Linked and Spacer Images Without Alternative Text. Two linked images and two spacer images on the Carson page also lacked alternative text, replicating the navigational barriers encountered on the Harrison page and further disrupting Plaintiff's ability to build a sequential understanding of the product page's structure and linked content.

(c) Missing and Empty Form Labels. The WAVE evaluation identified four missing form labels and two empty form labels on the Carson Leather Overnighter Bag page. Of critical significance, the personalization input field — through which a customer would enter the initials, name, or inscription to be monogrammed on the bag — was among the form elements flagged for missing or broken label coding. When Plaintiff navigated to the area of the page marked "Add Personalization for $17," the input field for entering personalization text was not announced by NVDA in a manner that identified its purpose. Plaintiff could not determine what text to enter, whether a character limit applied, or whether his entry had been registered. The feature that was of primary functional

importance to him was inaccessible.

(d) Empty Heading Elements. The WAVE tool identified four empty heading elements on the Carson page. Each represented a section boundary in the page's structure that was coded as a heading but conveyed no content when read aloud by NVDA. Plaintiff lost his navigational orientation within the product page each time his screen reader reached one of these empty structural markers.

(e) Seven Empty Buttons. The Carson Leather Overnighter Bag page contained seven empty button elements — the most of any of the three pages audited. Each was announced by NVDA as "button" without any label describing the button's function. Plaintiff encountered these buttons at multiple points in the page's interface, including in the product carousel navigation region and within interactive controls governing product configuration, and was unable to determine what any of them would do if activated. Sighted users can read the visual label or icon on each button; Plaintiff could not.

(f) Broken ARIA References. Four broken ARIA references were identified on the Carson page. As on the Harrison page, the color selector controls — offering options including chocolate and brown leather — were governed by aria-labelledby attributes that WAVE flagged as broken, meaning the referenced label elements did not exist in the code as coded. NVDA was therefore unable to announce the color option names, the currently selected color, or the mechanism for changing the selection. Plaintiff could not complete this required step in the purchase process.

(g) Very Low Contrast. Three contrast errors were identified on the Carson Leather Overnighter Bag page, indicating that text elements in the page's design lacked sufficient contrast against their backgrounds to meet WCAG 2.1 AA minimum standards. This is consistent with the same pattern identified on the other pages.

(h) AIM Score of 5.3 Out of 10. The WebAIM AIM accessibility score for the Carson Leather Overnighter Bag page was 5.3 out of 10 as of the August 20, 2026 evaluation, confirming that the page fell meaningfully below the threshold of accessible design.

31. As a direct result of the barriers described in paragraph 29, Plaintiff was unable to independently review the Carson Leather Overnighter Bag, select a leather color, activate or complete the personalization service, or proceed to checkout during his July 10, 2026 visit. He remained ready and financially able to complete the purchase and retained his intent to return to the Website to do so.

32. On August 12, 2026, Plaintiff again accessed www.markandgraham.com from his home computer at 6355 Broadway, Bronx, New York 10471, using NVDA screen reading software and keyboard navigation. On this occasion, Plaintiff navigated to the Livia Italian Suede Zip-Top Tote product page, located at: https://www.markandgraham.com/products/livia-italian-suede-zip-top-tote/. Plaintiff visited this page for the purpose of purchasing the Livia Italian Suede Zip-Top Tote, priced at $175, as a personalized gift for a family member who regularly assists him with transportation and daily activities made necessary by his visual impairment. Plaintiff specifically sought to use Defendant's personalization service to have the recipient's name or initials monogrammed on the tote — a meaningful expression of personal gratitude and an act of independent consumer choice that his disability would otherwise prevent him from making in a physical retail setting, where he cannot read labels, inspect fine goods, or configure personalization options without sighted assistance. The ability to independently select, personalize, and purchase this gift through an accessible website represented a discrete form of autonomy that Defendant's inaccessible platform denied him.

33. During his visit on August 12, 2026, Plaintiff encountered the following specific access barriers on the Livia Italian Suede Zip-Top Tote product page, each of which is documented

in the WAVE accessibility evaluation conducted on August 20, 2026 — and which collectively represent the most severe accessibility failures of any of the three product pages Plaintiff visited:

(a) Missing Alternative Text on Product Images. Eleven images on the Livia page lacked alternative text. Plaintiff's NVDA screen reader conveyed no description of the tote's appearance, suede texture, color options, or construction features for any of these images. The page also presented user-generated content images — photographs submitted by customers and displayed as part of the product page — for which no alternative text was provided, depriving Plaintiff even of the informal visual community around the product.

(b) Linked and Spacer Images Without Alternative Text. Two linked images and two spacer images on the Livia page also lacked alternative text, replicating the same navigational disruptions encountered on the prior product pages.

(c) Missing and Empty Form Labels. The WAVE evaluation identified four missing form labels and four empty form labels on the Livia page — a combined total of eight form label deficiencies, the highest of any of the three pages audited. The personalization input field was again non-functional for Plaintiff's screen reader, rendering the primary purpose of his visit — to configure a personalized gift — impossible to accomplish independently.

(d) Eight Empty Heading Elements. Eight heading elements on the Livia page were coded as structural headings but contained no text content. These structural failures were the most severe of any page Plaintiff visited and resulted in repeated navigational breakdowns as NVDA announced empty heading levels throughout his attempt to read through the page.

(e) Six Broken ARIA References. Six broken ARIA references were identified on the Livia page — again the highest count of any of the three audited pages. The color selector

controls governing the tote's available color variants, including camel and chocolate, were governed by aria-labelledby attributes flagged as broken by the WAVE tool. As on the other pages, Plaintiff could not determine the available color options, the currently selected color, or how to navigate among the choices.

(f) Very Low Contrast. Three contrast errors were identified on the Livia page, consistent with the site-wide pattern of contrast non-compliance.

(g) Twenty-One Suspicious Alternative Text Alerts. The WAVE tool identified twenty-one instances of suspicious alternative text on the Livia page — the highest such count in the evaluation — meaning that while some images had been assigned alternative text, the text assigned was flagged as potentially uninformative or contextually inappropriate. These included text values such as placeholder labels and repeated generic descriptions that conveyed no meaningful information about the specific images they described. For Plaintiff, even where alternative text existed, it failed to deliver the product context a blind user requires to make an informed purchasing decision.

(h) AIM Score of 5.3 Out of 10. The WebAIM AIM accessibility score for the Livia Italian Suede Zip-Top Tote page was 5.3 out of 10 as of the August 20, 2026, evaluation — identical to the Carson page score and well below the standard of accessible digital design.

34. As a direct result of the barriers described in paragraph 32, Plaintiff was unable to independently review the Livia Italian Suede Zip-Top Tote, select a color variant, enter personalization information for the intended recipient, or proceed to checkout during his August 12, 2026, visit. The gift Plaintiff sought to purchase independently — as a blind consumer exercising the same consumer autonomy available to any sighted visitor to Defendant's Website — was foreclosed to him entirely by the inaccessibility of www.markandgraham.com.

35. The WAVE accessibility evaluations conducted on August 20, 2026, assessed all three product pages Plaintiff had visited and confirmed in documented, reproducible form the barriers Plaintiff had experienced on each of his three visits. In the aggregate across the three pages, the evaluations identified 116 discrete accessibility errors, 7 contrast errors, and 328 alerts. The AIM accessibility scores for the three pages ranged from 5.3 to 6.0 out of 10, confirming that none of the evaluated pages met the baseline of accessible design. The categories of error identified — missing alternative text, missing and empty form labels, empty headings, empty buttons, empty links, and broken ARIA references — are not isolated coding oversights; they are the repeated, systematic features of an inaccessible website design that fails blind users at every interactive step of the shopping experience.

36. Plaintiff intends to return to www.markandgraham.com in the future to browse and purchase Mark & Graham products, including the Harrison Leather Messenger Bag, the Carson Leather Overnighter Bag, and the Livia Italian Suede Zip-Top Tote, once those pages and the Website as a whole are made fully accessible to individuals who use screen reading technology. Plaintiff is deterred from returning to the Website in its current state because doing so would subject him to the same barriers he encountered on each of his three prior visits. Plaintiff's desire to access the Website and complete these purchases is genuine, concrete, and ongoing.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action on behalf of himself, and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

> All legally blind individuals in the United States who have attempted to access www.markandgraham.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the

goods, services, and information offered thereon, including Defendant's personalized leather goods, accessories, travel items, and gift products.

38. Plaintiff also seeks certification of a New York subclass consisting of:

> All legally blind individuals residing in the State of New York who have attempted to access www.markandgraham.com and were denied equal access to the goods, services, and information offered thereon as a result of Defendant's failure to design, construct, maintain, and operate the Website in a manner compatible with screen reading software and keyboard navigation.

39. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant Williams-Sonoma, Inc. operates www.markandgraham.com as a nationwide e-commerce platform generating approximately $73 million in annual revenue, marketing premium personalized leather goods, accessories, travel items, and gifts to consumers throughout the United States. Upon information and belief, there are more than two million legally blind individuals in the United States, hundreds of thousands of whom reside in New York, and a substantial number of whom have attempted to access www.markandgraham.com and have been denied equal access due to the systemic accessibility barriers documented in the WAVE evaluations conducted on August 20, 2026. Defendant's prior ADA litigation and enforcement history — including, upon information and belief, the receipt of dozens of written demand letters and formally filed web accessibility complaints targeting Williams-Sonoma, Inc. and its family of brands in federal courts across the United States — further demonstrates that Defendant has long been aware of accessibility failures affecting blind consumers and has nonetheless declined to take meaningful corrective action with respect to www.markandgraham.com.

40. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions

include, but are not limited to:

(a) whether Defendant's Website, www.markandgraham.com, contains accessibility barriers that prevent blind and visually impaired individuals from independently accessing its goods, services, and personalization features;

(b) whether Defendant's failure to make its Website accessible violates Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

(c) whether Defendant's failure to maintain accessible digital content violates the New York State Human Rights Law and the New York City Human Rights Law;

(d) whether Defendant's conduct constitutes ongoing and intentional discrimination against blind consumers who rely on screen reading software to access digital content; and

(e) whether injunctive and declaratory relief is warranted to require Defendant to bring www.markandgraham.com into full conformance with the Web Content Accessibility Guidelines, Version 2.1, Level AA.

41. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class and Subclass, is legally blind, relies on screen reading software and keyboard navigation as his exclusive means of accessing digital content, and was denied equal access to www.markandgraham.com due to the same systemic accessibility barriers identified in the WAVE evaluations conducted by WebAIM on August 20, 2026. The barriers Plaintiff encountered — including missing alternative text, missing and empty form labels, empty heading elements, empty button and link elements, and broken ARIA references — are structural and site-wide deficiencies that affect every blind user who visits the Website, not just Plaintiff.

42. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has no interests antagonistic to those of the Class or Subclass. Plaintiff has retained counsel experienced in ADA Title III litigation, class action procedure, and digital

accessibility matters, who are prepared to vigorously prosecute this action on behalf of Plaintiff and all members of the Class and Subclass.

43. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive and declaratory relief appropriate with respect to the Class as a whole pursuant to Rule 23(b)(2). Defendant continues to own, operate, and maintain www.markandgraham.com without any policy, plan, or practice sufficient to ensure accessibility for blind and visually impaired users, and without any timeline or commitment to remediate the barriers documented herein, thereby subjecting all blind users who visit the Website to the same discriminatory experience Plaintiff encountered on June 23, 2026, July 10, 2026, and August 12, 2026.

44. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate www.markandgraham.com in compliance with WCAG 2.1 Level AA, and because Defendant's acts and omissions apply uniformly to all blind individuals who attempt to use the Website. The accessibility barriers identified herein are not individualized — they are consistent, reproducible, and structural features of an inaccessible website that denies equal access to every blind user without regard to the specific product page, transaction, or date of access. Declaratory and injunctive relief compelling Defendant to bring www.markandgraham.com into full WCAG 2.1 Level AA compliance is the appropriate and necessary remedy to ensure equal access for Plaintiff and all members of the Class and Subclass.

**FIRST CAUSE OF ACTION**
(Violations of the ADA, 42 U.S.C. § 12182 et seq.)

45. Plaintiff, **JEFFREY PARKER.** on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.
>
> 42 U.S.C. § 12182(a).

46. Defendant's Website, www.markandgraham.com is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen reading technology.

47. Defendant has failed to design, construct, maintain, and operate its website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

48. Defendant's website contains numerous accessibility barriers—including missing alternative text, broken ARIA references, unlabeled buttons, inaccessible pop-ups, improper heading structure, and aria-hidden focusable content—that prevent blind users from perceiving, navigating, and interacting with the website.

49. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

50. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages,

or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

51. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.markandgraham.com has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

52. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

53. Plaintiff, **JEFFREY PARKER,** on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

54. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

55. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

56. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.markandgraham.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

57. Plaintiff has visited the Website, www.markandgraham.com on a number of occasions and has encountered barriers to his access that exist.

58. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

59. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities,

privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

60. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

61. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

62. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

63. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

64. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

65. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

66. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

67. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered through the website.

68. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

## THIRD CAUSE OF ACTION
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

69. Plaintiff, **JEFFREY PARKER,** on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

70. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

71. Persons within New York State are entitled to full and equal accommodations,

advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

72. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or him civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

73. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

74. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.markandgraham.com is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

75. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

76. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

77. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id*...

78. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

79. Plaintiff, **JEFFREY PARKER,** on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

80. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

81. Defendant is subject to NYCHRL because it owns and operates the Website, www.markandgraham.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

82. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, www.markandgraham.com causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

83. Defendant is required to "make reasonable accommodation to the needs of persons

with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

84. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

85. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

86. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

87. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

88. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

89. Plaintiff is also entitled to reasonable attorneys' fees and costs.

90. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

91. Plaintiff, **JEFFREY PARKER,** on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

92. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

93. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;

- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.markandgraham.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing him counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
August 22, 2026

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

*/s/ Robert Schonfeld*
Robert L. Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889